(No. 76-CC-0300—)

STEVENS BUSINESS FORMS, Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 21, 1977.*

JEROME M. RUBENSTEIN, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

This matter comes before the Court as a result of a joint stipulation of facts as to issues, which states as follows:

"Come now the parties hereto and stipulate and agree that the following facts may be taken as proven without the necessity of offering any evidence. Said parties further agree that this joint stipulation, together with the Deposition of Charles F. Stephens, Jr., (with attached Exhibits) and Exhibit G, heretofor filed with the Court, state all the facts to be adduced herein and that no additional evidence shall be offered in this action. Each party reserves to itself the right to file briefs herein pursuant to the rules of the Court after the filing of this stipulation. Thereafter, the case may be taken by the Court as submitted.

1. The contract between Claimant and Respondent was for a total of 8,000,000 forms consisting of 5,000,000 RT1s and 3,000,000 RT2s.

2. Except for 100,000 RT1 forms delivered to Springfield, Illinois, none of the unusable forms for which claim is being made were delivered to the State of Illinois.

3. The contract did not specify the ink to be used (other than to specify Face-Blue and Red: Backer-Blue:").

4. The contract did not say that the ink must be "copiable."

5. Stephens Press, Inc., d/b/a Stephens Business Forms, Claimant herein, (hereinafter "Stephens") printed the Regititles, which are the subject matter of this claim, in 1974 (for use in 1975).

6. Stephens had printed similar forms for the State of Illinois in 1974 and in years prior to 1974.

7. Stephens had used what appears to be a similar blue ink on some of the forms it printed for the State of Illinois in 1974 (for use until June 30, 1975) as it used on the Regititles, which are the subject matter of this claim.

8. Stephens did not know that the State of Illinois was going to copy the Regititles on the type of equipment the State ultimately used.

9. The Regititles Stephens printed in 1974 were copiable on most other types of copying machines other than the one the State actually planned to use, and did in fact use, for the forms which are the subject matter of this claim.

10. Neither party was aware that the copying

140

equipment being used by the State of Illinois would not copy a particular blue ink used by the Claimant on the original printing.

11. Question Number one on the back side of the first sheet of Form RT1 stated: "Use black ballpoint pen or typewriter with dark ribbon." Some of the previous years' forms (also printed by "Stephens" stated on their face: "Print with *black* ballpoint pen or typewriter."

12. A darker blue ink (blue with black ink added) was substituted on the new printing and was copiable.

13. The $33,334.08 claimed by the Claimants is their estimated costs (no profits) for producing the forms that had to be destroyed.

14. The paper destroyed had a salvage value of approximately $375.00."

The question at issue is whether or not Claimant should be paid for producing the forms that had to be destroyed, minus the salvage value of $375.00.

It appears to the Court that Claimant had in the past furnished identical forms printed with the same ink and that it did not have any knowledge that the State of Illinos was going to copy the Regititles on the type of equipment that State ultimately did.

It further appears that the contract entered into by the State of Illinois and Claimant did not specify the type of ink that had to be used. In view of the fact that previous forms had been satisfactory, it is only reasonable to assume that Claimant was of the opinion that the forms furnished would be copiable.

It is unfortunate that neither party was aware that the copying equipment being used by the State had

been changed so that the forms previously furnished were no longer copiable.

It is fortunate that the mistake was discovered before any other forms had been printed.

It appears to the Court that Claimant did perform its portion of the contract and that it did expend money in the amount of $33,334.08 for producing the forms on behalf of the State, minus the salvage value of the paper which was in the amount of $375.00.

A party to a contract who performs under same is entitled to be compensated for its work thereunder. *17 Am. Jur. 2d Contracts, 355.* In 382 of said section, the following rule is laid down:

"The Rule is well settled that there may be a recovery on the contract for part performance of an entire contract if complete performance has been prevented by the other party. The act of one party to an entire-contract in preventing the completion of the undertaking gives a right of recovery. Expressed otherwise, a party to a contract, even though it is entire, who has performed part of it according to its terms and is prevented by the other party from performing or completing the contract may recover compensation for the work performed and materials furnished. A person prevented from continuing his contract by the arbitrary act of the other party may disregard it and recover the value of his services rendered in partial performance of it . . . ."

An award is hereby made in the amount of $32,959.08.